CASE 90.—ACTION BY GENEVIEVE HENDRICKS' ADMINIS-
      TRATOR, AGAINST THE AMERICAN EXPRESS
      COMPANY.—June 9, 1910.

## Hendricks' Admr v. American Express Co.

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1.   Action—Joinder—Death and Suffering of Deceased.—Action
     for one's suffering cannot be joined with one for her death.
2.   Carriers—Delay in Delivering—Liability.—A carrier being in-
     formed, when a package was delivered to it for transportation.
     that it contained medicine for a sick girl, and that it was
     important that it should be delivered without delay, it is un-
     necessary to recovery for suffering by her from delay in its
     delivery, that the order for the medicine made by her father
     and doctor, when in fact she was unconscious, should have
     been with her knowledge and approval.

R. Y. THOMAS, JR., for appellant.

BROWDER & BROWDER and TRABUE, DOOLAN & COX, for
appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Revers-
ing.

Genevieve Hendricks, a child about 10 years old, be-
ing dangerously ill of pneumonia, her father, who
was a doctor living at Central City, Ky., ordered on
the morning of December 12, 1907, by telephone, from
a drug firm in Louisville, two tanks of Walton's Com-
pound Oxygen for the purpose of administering it
to his patient and child. The oxygen was delivered

to the appellee express company in time to be and was shipped on the train leaving Louisville at noon on the day it was ordered. The train on which it was sent reached Central city a little after 3 p. m. on the same day, but by the negligence of the express messenger the oxygen was not put off the train at Central City. As a result of this negligence, it became necessary to order other oxygen from Louisville, the nearest point at which it could be obtained, and this did not arrive at Central City until early the next morning. The child died, and this action was brought by her father as administrator to recover damages for the negligence of the express company in failing to deliver at Central City as it should have done the oxygen that reached there on the afternoon of the 12th.

Two causes of action were set up in the petition—one, on account of the death of the child, which was attributed to the failure to receive in due time the oxygen, and the other, to recover for the pain and suffering sustained by the child on account of the failure to receive the oxygen in time to relieve her distress. It is charged in the petition that: "Walton's Oxygen Compound, which is put up in cylinders, is used for and is very beneficial in cases of pneumonia, often curing the patient and saving life when all other means have failed. That said oxygen is used by means of an inhaler and breathed into the lungs of the patient, and is administered for a minute until given three times, every half hour, every hour, or every two or three hours, according to the urgency of the case. The said compound in cases of pneumonia will relieve pain and relieve trouble in the lungs when all

other means have failed.  *  *  *.  That at the time said compound was delivered to the defendant for shipment, as aforesaid, said company was fully notified and apprised of the character of the compound, and of the fact that it was an unusual shipment of goods of an unusual kind, and was notified of the purpose for which it was to be used.  That the decedent was for 12 hours deprived of the use and benefit of the oxygen by reason of the gross and concurrent negligence of the defendant company and its agent and messenger in not delivering said compound to plaintiff at Central City in due time. · That during said 12 hours said decedent was conscious and suffered excruciating bodily pain and mental anguish because of being deprived of said compound as aforesaid, which, if administered to her, would have relieved and soothed her bodily pain and consequently her mental anguish, and which could and would have been administered to her had it been delivered by defendant within a reasonable time after shipment.  There was no other means of relieving her pain and anguish, all other known remedies for said disease having failed to benefit or relieve her.  That said compound could not be obtained nearer than Louisville, and no sooner than it was after the first package had been carried by Central City as aforesaid.  That the administration of said compound, had it been received when it should have been, would not only have relieved her of her suffering and mental anguish, but would probably have saved her life.'' The answer traversed the petition, and set up some other defenses not necessary to mention.  Upon a trial of the case before a jury, a verdict was returned in favor of the express company.  To reverse the judgment entered on the verdict this appeal is prosecuted.

There was sufficient evidence on the part of the plaintiff below to take the case to the jury; and, in view of the fact that the case must be reversed for error in the instructions it does not seem either appropriate or necessary to relate the facts.

The principal error concerns instruction No. 2, reading as follows: "The jury will find for the defendant unless they believe from the evidence that the two tanks of oxygen compound were ordered by J. G. Hendricks for the exclusive use and benefit of Genevieve Hendricks, with her knowledge and approval, and that the defendant, when said tanks of oxygen compound were delivered to it, was notified that said tanks contained medicine for a girl who was sick at Central City, and that it was important that said shipment should go forward and be delivered without delay." It will be noticed that the jury were directed in this instruction to return a verdict for the company unless they believe from the evidence that the compound was ordered with the knowledge and approval of the sick child. This was virtually a peremptory instruction to find for the company, as at the time the oxygen was ordered the child was in an almost unconscious condition, and, aside from this, had no appreciation or understanding of what she needed, or what kind of medicine should be ordered for her benefit or administered to her, although it is true that her father states that he told her he was going to send for the oxygen, and she said it was all right. But this instruction was given upon the erroneous idea that there could be no recovery unless the oxygen was directly ordered by the person for whom it was intended. If this were the case, then it would follow that, if a person was actually unconscious, there could be no recovery for the negligence

of a carrier for the failure to deliver medicine intended for his use in a state of case in which the carrier would be liable if the medicine had been ordered by the patient. In a case like the one we are considering, it is wholly immaterial whether the medicine was ordered with the knowledge and approval of the patient or not. Any member of the family or other person interested in the patient might have ordered the medicine without the consent or approval of the patient, and the liability of the carrier would be precisely the same as if it had been ordered in person by the patient. If the child had lived, she could have brought suit in her own name to recover damages for the failure of the company to deliver this oxygen. Her administrator also had a right of action to recover damages for either her mental and physical suffering before death, or her death, although both actions could not be joined. And it may here be remarked that, upon the trial, a recovery for damages on account of the death of the child was abandoned, and it is not insisted here that the court erred in taking the case from the jury upon this question. The argument for the company is that there could be no recovery in this case unless there was evidence that the oxygen was ordered by the patient or with her knowledge and approval. Counsel say that the child was not a party or privy to the contract, that the carrier owed her no duty because it had no transaction with her, and consequently did not violate any obligation owing to her. But her physician or any member of the family or any person interested in her recovery who orders medicine for a sick person under circumstances like those shown in this case will be deemed to act as the agent of the patient, and, when so considered, the contract will be treated as if made

by the patient through the agent with the company. In cases like this, so far as the duty and obligation of the carrier is concerned, it is not material by whom articles it fails to carry in due time are delivered to it, nor is it material for whom they are intended or by whom they are ordered. Its obligation is precisely the same whether the thing is ordered by or delivered to it by the owner or an agent or a stranger.

It is also insisted that the use of the words "two tanks of oxygen" in the instructions were misleading. We doubt if this criticism is well founded, but upon another trial, in order to remove any possible room for doubt in the minds of the jury, it might be well for the court to designate the oxygen as that delivered to the company at Louisville at noon, or as that which should have been received at Central City at 3:20 p. m.

It is further said that the court erred in instructing the jury that they could not award damages on account of the death of Genevieve Hendricks. This instruction was proper. The administrator, as we have said, could not recover in the same action for both the mental suffering and the death. On another trial these words in instruction No. 2 "that the two tanks of oxygen compound were ordered by J. G. Hendricks for the exclusive use and benefit of Genevieve Hendricks, with her knowledge and approval and," should be omitted.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.